UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIE MAE SMALL,

    Plaintiff,

v.                                                                   Case No: 8:15-cv-1031-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

    Plaintiff, Willie M. Small, seeks judicial review of the denial of her claim for supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A. Procedural Background

    Plaintiff filed an application for supplemental security income on February 7, 2012. (Tr. 13.) The Commissioner denied Plaintiff's claim both initially and upon reconsideration. (Tr. 13.) Plaintiff then requested an administrative hearing. (Tr. 13.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 13.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits. (Tr. 10–25.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–9.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1966, claimed disability beginning on December 1, 2011. (Tr. 13, 23.) Plaintiff has a limited education, having completed the ninth grade. (Tr. 23, 34.) Plaintiff's past relevant work experience included work as a cleaner. (Tr. 23.) Plaintiff alleged disability due to back pain and hip pain. (Tr. 18, 194, 213.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since February 7, 2012, the application date. (Tr. 15.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, and obesity. (Tr. 15.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with occasional stooping and crouching. (Tr. 17.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 18.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as a cleaner. (Tr. 23.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform her past relevant work as a cleaner, as well as other jobs existing in significant numbers in the national economy, such as a cashier, ticket taker, and laundry folder. (Tr. 23–24.) Accordingly, based on

Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 24.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled or not disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20

C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the basis that the ALJ failed to properly consider whether Plaintiff's intellectual disability meets or equals the requirements of Listing 12.05.  Specifically, Plaintiff contends that she meets the criteria in Listing 12.05(C) because she has a

valid verbal IQ score of 57 and additional severe impairments of degenerative disc disease, degenerative joint disease, and obesity.  Plaintiff further argues that the ALJ failed to make a finding regarding whether Plaintiff had deficits in adaptive functioning and failed to provide analysis regarding whether Plaintiff's impairments were equal in severity to Listing 12.05.  For the reasons that follow, these contentions do not warrant reversal.

In this case, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date and proceeded to step two to consider whether Plaintiff had a severe medically determinable physical or mental impairment of required duration.  (Tr. 15.)  20 C.F.R. § 416.920(a)(4)(i).  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, and obesity.  (Tr. 15.)  20 C.F.R. § 416.920(a)(4)(ii).  At this step, the ALJ determined that Plaintiff's borderline intellectual functioning was not a severe impairment because it did not cause more than minimal limitation in her ability to perform basic work activities.  (Tr. 15.)  20 C.F.R. § 416.920(a)(5)(c).  Upon finding the existence of a severe impairment, the ALJ proceeded to the third step of the sequential evaluation process to consider whether Plaintiff's severe impairments met or equaled one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  20 C.F.R. § 416.920(a)(4)(iii).

At the third step of the sequential analysis, a claimant must show that his or her impairment meets or equals a listed impairment.  *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  To be considered for disability benefits for intellectual disability under Listing 12.05, a claimant must satisfy the diagnostic description in the introductory paragraph for the listing, which requires that a claimant demonstrate significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age twenty-two.  20 C.F.R. Part 404, Subpart P,

Appendix 1, Listing 12.05; *see also* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 42 (text rev., 4th ed. 2000) (stating that adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociological background, and community setting"). In addition to meeting the diagnostic threshold, a claimant must meet the severity requirements in Section A, B, C, or D of Listing 12.05. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05. Relevant to this appeal, Section C of Listing 12.05 requires the following: (1) evidence of a valid IQ score of 60 to 70; and (2) evidence of an additional mental or physical impairment imposing an additional and significant work-related limitation of function. *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001). Therefore, Listing 12.05(C) requires that a "claimant meet[] the diagnostic criteria of Listing 12.05, including deficits in adaptive functioning; a qualifying IQ score; onset before age 22; and the requisite deficits in work-related functioning." *Perkins v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 870, 873 (11th Cir. 2014). To show that an impairment matches a listing, a claimant "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

A valid IQ score of below 70 creates a rebuttable presumption that a claimant manifested deficits in adaptive functioning before age twenty-two. *Hodges*, 276 F.3d at 1268–69. However, once a claimant demonstrates a valid IQ score below 70, the ALJ can rebut this presumption by presenting evidence relating to the claimant's daily life. *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 459 (11th Cir. 2015) (citing *Hodges*, 276 F.3d at 1269). Further, the ALJ is not required to rely on the results of an IQ test alone in determining intellectual disability. *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986). Rather, the ALJ must consider the test results in

conjunction with the other evidence in the record and must examine the test results to "assure consistency with daily activities and behavior." *Id.* As such, a valid IQ score is not conclusive of intellectual disability if the "score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

In this case, Plaintiff was tested using the Wechsler Intelligence Scale for Children—Revised ("WISC-R"), which yields a verbal, performance, and full scale IQ score. The record in this case includes three sets of IQ scores derived from this test. (Tr. 233–239.) In December 1975, when Plaintiff was nine years old and in the third grade, she achieved a verbal IQ score of 57, a performance IQ score of 70, and a full scale IQ of 60. (Tr. 233.) In May 1978, when Plaintiff was twelve years old and in the fifth grade, she achieved a verbal IQ of 57, a performance IQ of 80, and a full scale IQ of 67. (Tr. 236.) In April 1981, when Plaintiff was fourteen years old and in the ninth grade, she achieved a verbal IQ of 60, a performance IQ of 80, and a full scale IQ of 69. (Tr. 238.)

In his decision, the ALJ evaluated Plaintiff under Listing 12.05 for intellectual disability and found that Plaintiff did not meet the criteria of the listing. (Tr. 16.) Specifically, the ALJ stated the following:

> Turning to listing 12.05 (*Intellectual Disability*), the requirements in paragraphs A, B, or C are not met. There is no evidence of mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded. Nor is there evidence of any valid verbal, performance, or full scale IQ of 59 or less or valid verbal, performance, or full scale IQ of 60 through 70 with a physical or other mental impairment imposing an additional and significant work-related limitation of function. The records include educational records dating from 1975 to 1980. (Ex. 13E). A psychological report from 1975, when the claimant was nine years of age, notes that the claimant was placed in special education services. (Ex. 13E, pg. 4–5). Wechsler Intelligence Scale for Children (WISC-R) testing returned a full-scale IQ score of 60, performance scale of 70, and verbal IQ of 57. Despite her intellectual limitations, the claimant reported [she] was able to perform self-care tasks, initiate academic

   tasks at home, and handle all chores and responsibilities at home and in the classroom.  Repeat testing from 1986, when the claimant was 14 years of age showed that the claimant had a full scale IQ of 69, verbal IQ of 60, and performance IQ of 80.  (Ex. 13E, pg. 8–9).  Academic testing showed that the claimant was at the third grade level in reading and math.  While these scores fall within the criteria listed above, the earnings and other records show that the claimant has had a steady history of working at substantial gainful activity levels.  (Exs. 5D, 3E).  The claimant also identified herself as the owner of a cleaning business.  For these reasons along with reports of full adaption, the undersigned does not find that the claimant meets any of the criteria of Listing 12.05.

(Tr. 16)  As such, the ALJ acknowledged that Plaintiff had a low IQ score that fell within the criteria under Listing 12.05, but he determined that Plaintiff did not have the deficits in adaptive functioning necessary to meet Listing 12.05.  Contrary to Plaintiff's argument, the ALJ's decision indicates that Plaintiff's "reports of full adaption" were inconsistent with a finding of deficits in adaptive functioning.  *See Bouler v. Comm'r of Soc. Sec.*, 624 F. App'x 728, 729 (11th Cir. 2015) (finding that the ALJ implicitly determined that the claimant did not have the requisite deficits in adaptive functioning by presenting evidence relating to the claimant's daily life).  The ALJ further found that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments." (Tr. 17.) *See Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (stating that if the claimant contends that the impairment equals a listed impairment, then the claimant must "present evidence which describes how the impairment has such an equivalency").

  Upon review of the record, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff failed to satisfy the criteria under Listing 12.05 because Plaintiff did not demonstrate deficits in adaptive functioning necessary to satisfy the diagnostic description in the listing.  *See Perkins*, 553 F. App'x at 873 (finding that the ALJ did not discredit the validity of the claimant's IQ tests, but only concluded that the claimant did not suffer from intellectual

- 8 -

disability as defined under Listing 12.05 because the claimant's deficits in adaptive functioning were not reflective of intellectual disability). Plaintiff performed a wide range of activities of daily living, including reading and writing, using the computer, counting small bills, cooking and preparing simple meals, watching television, shopping for groceries, personal grooming, and driving. (Tr. 34–43.) *See O'Neal*, 614 F. App'x at 460 (finding that the claimant did not have sufficient adaptive functioning deficits to meet the requirements of the diagnostic description in Listing 12.05, despite his low IQ, when he helped with light yard work, cared for his two children, independently performed activities of personal care and daily living, and drove locally three times per week). To the extent that Plaintiff alleged difficulty in performing these activities, with the exception of high-level reading and math, she alleged difficulty based on her physical spine and hip pain, not her cognitive limitations. (Tr. 36–43.) Indeed, when asked what problems prevented her from working, Plaintiff testified that she is unable to work because she cannot sit or stand for prolonged periods and has to constantly move to ease her pain. (Tr. 37.) Aside from the test results discussed above, the record is devoid of any other evidence regarding Plaintiff's cognitive limitations or deficits in adaptive functioning.

Further, substantial evidence supports the ALJ's finding that Plaintiff's work history is inconsistent with a finding of intellectual disability under Listing 12.05. The record reflects that Plaintiff worked as a housekeeper for eight to nine years, a caregiver at a daycare for two years, and then most recently as a house cleaner and owner of a cleaning business. (Tr. 36–37.) In light of this, the ALJ committed no error in considering Plaintiff's work history in evaluating the conclusive nature of Plaintiff's low IQ score. *See Lowery*, 979 F.2d at 837 (finding that an IQ score is not conclusive of intellectual disability when it is inconsistent with other evidence in the record on the claimant's daily activities and behavior). Therefore, the ALJ properly relied on the

record as a whole in determining that Plaintiff adaptively functioned higher than that required by Listing 12.05, and the ALJ's decision is supported by substantial evidence. *See Garrett v. Astrue*, 244 F. App'x 937, 939 (11th Cir. 2007) (finding that the ALJ did not err in determining that the required limitations in adaptive functioning were not present, despite the claimant's low IQ score, based on the claimant's activities of daily living and work history).

While Plaintiff challenges the ALJ's decision based on Plaintiff's additional severe impairments, the existence of these impairments does not affect the ALJ's decision because the ALJ determined that Plaintiff did not have deficits in adaptive functioning to meet Listing 12.05, irrespective of whether she met other requirements. As stated above, a claimant must meet the diagnostic threshold in Listing 12.05 "in addition to one of the four sets of criteria found in 12.05(A), (B), (C), or (D) in order to show that his impairments are severe enough to meet or equal Listing 12.05." *Perkins*, 553 F. App'x at 872; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (providing that a claimant's impairment must satisfy the diagnostic description in the introductory paragraph and any one of the four sets of criteria in the listing for a claimant to meet Listing 12.05). Specifically, Section 12.00 provides:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph **and** any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (emphasis added). Further, "[i]n order to meet a Listing, the claimant must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets some of the criteria." *Perkins*, 553 F. App'x at 872. Therefore, the ALJ did not err in finding that Plaintiff did not meet Listing 12.05

on the basis that she failed to meet the diagnostic criteria provided in the listing, which is supported by substantial evidence.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on April 8, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record